287 So.2d 458 (1973)
STATE of Louisiana
v.
James TANT and Carolyn Moffett.
No. 53860.
Supreme Court of Louisiana.
December 3, 1973.
Rehearing Denied January 11, 1974.
*459 Murphy W. Bell, Director, Baton Rouge, Vincent Wilkins, Jr., Lake Charles, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Frank J. Gremillion, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
The defendants, James Tant and Carolyn Moffett, were charged by Bill of Information with violation of R.S. 40:966(A)(1), possession of a controlled dangerous substance with intent to distribute. A jury found the defendants guilty, and they were sentenced to be committed to the custody of the Louisiana Department of Corrections, Tant to be confined for a period of three and one-half years, Moffett for a period of five years. Defendants rely upon three perfected bills of exceptions to obtain a reversal of their sentence and conviction. All three bills relate to the legality of a search and seizure in which marijuana was found. A hearing on a motion to suppress was held and the trial court ruled that the evidence seized was admissible. To this ruling, Bill of Exceptions No. 1 was taken.
Bill No. 2 was taken when the allegedly illegally obtained evidence was admitted at trial, and Bill No. 3 was taken to the denial of defendants' motion for a new trial. Dispositive of all three bills is the determination of the validity of the search of the car.
On the night of September 21, 1972, Officer Michael R. Barnett, Deputy Sheriff, East Baton Rouge Parish, Narcotics Division, received information from an informant (whom Barnett said was reliable) that the automobile belonging to Carolyn Moffett contained some drugs. Officer Barnett testified that on this information he believed he could have secured a search warrant. However, he chose instead to place the car under surveillance for a period of time, this being the policy of the office after receiving information on drugs. He testified that he spent some time on the night of September 21, 1972 watching the car. Surveillance was reinstituted the following afternoon. After three hours of watching the vehicle on the afternoon of September 22, 1972 two officers saw the defendants get into the automobile. The defendants drove to a service station, had the vehicle serviced and filled with gas, giving the officers the impression the defendants were about to leave on a trip. The officers followed defendants out the Interstate and had them stopped by a marked patrol car about four miles from the parish line, as they feared the defendants were going to escape their jurisdiction. The defendant Tant, who was driving, was told to open the trunk. After getting no response to his query as to whether he was under arrest except the repeated order to open the trunk, Tant complied. In a closed suitcase belonging to Moffett, the officers found seven one ounce bags of marijuana and only then placed the defendants under arrest. Subsequent to this arrest, Miss Moffett's purse was searched and five marijuana cigarettes were found.
The sole question that we must decide is whether or not the search under the instant set of facts was constitutionally valid. The general rule is that a search conducted without a warrant is per se unconstitutional. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 *460 (1973), and authorities cited therein. The rule is in compliance with the Fourth Amendment of the United States Constitution.
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
However, that rule is not without exceptions. See e.g., Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948); Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); Warden Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).
One exception to the general rule is that a moving vehicle may be stopped and searched where "exigent circumstances" make the securing of a search warrant impracticable. State v. McQueen, 278 So.2d 114 (La.1973); United States v. Childez-Castro, 430 F.2d 766 (7th Cir. 1970); Brinegar v. United States, supra; and Carroll v. United States, supra.
Two recent cases have dealt with the exception:
In Chambers v. Maroney, 399 U.S. 42, 48-52, 90 S.Ct. 1975, 1980-1981, 26 L.Ed.2d 419 (1970), the Court said of the "exigent circumstances" exception:
"Neither Carroll, supra, nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; . . ." (Emphasis ours)
In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Court reiterated that exigent circumstances justify the warrantless search of an automobile stopped on a highway, adding that the opportunity to search must be fleeting.
These cases clearly indicate that a warrantless search of a vehicle may be valid when there exists probable cause for a search and the circumstances dictate that the search should be made immediately. Further, in construing the above language, it is apparent that in all cases it is not necessary that the probable cause which gives rise to the search arise coincidentally with the occurrence of the exigent or unforeseeable circumstance.
In the case at hand the officer believed that he had sufficient knowledge to establish probable cause to the satisfaction of a magistrate, some 24 hours before the vehicle was stopped and searched. And, rather than moving immediately to secure a search warrant the officer chose rather to institute a surveillance. During the surveillance, it became obvious that unless prompt action was taken the defendants and any drugs in the defendants' possession would escape the jurisdiction of the police. Therefore, under these exigent circumstances the police were faced with either allowing the defendants to drive four miles into another parish or stopping them when it became obvious that the situation called for such action. Our review of the case convinces us that there were in fact "exigent circumstances" permitting the police to stop the defendants' vehicle and search it for illegal drugs.
Having decided that the warrantless search was justified by exigent circumstances, we must answer the more narrow question of whether the police, having allowed 24 hours to pass without securing or *461 attempting to secure a search warrant are precluded from relying upon the "exigent circumstances" exception to the general rule that warrantless searches are unconstitutional.
Neither the Constitution of the United States nor the jurisprudence requires that a police officer immediately obtain a search warrant upon his gaining probable cause for its issuance. Nor for that matter is there any impropriety as far as a defendant's constitutional rights are concerned if an officer with probable cause desists indefinitely from securing a warrant, absent an illegal search and seizure.
The only pertinence, to the issue at hand, of delay in the procurement of a warrant is that it would be a violation of constitutional rights if a police officer deliberately set up a motor vehicle surveillance awaiting an "exigent circumstance" for warrantless search in order to circumvent the requirement that an impartial magistrate pass upon the probable cause.
Here, only twenty-four hours elapsed from the time the police were told that the defendants' vehicle contained drugs and the search. It is not unreasonable, and accordingly it is permissible for police to exercise discretion in not immediately obtaining a search warrant in numerous hypothetical circumstances among which is the effort to uncover further violations of the law. This is in keeping with the general aims and needs of law enforcement. Furthermore, by purposely imposing this restraint, the police afford themselves more time to gather information with which to convince an impartial magistrate that a search warrant should issue. Under the facts of this case a delay of 24 hours is neither unreasonable nor indicative of improper motive. Because the warrantless search here falls within the exigent circumstance exception to the general rule that warrantless searches are unconstitutional, we find no violation of the defendants' rights in this case.
For the foregoing reasons the convictions and sentences are affirmed.
BARHAM, J., concurs.
TATE, Justice (dissenting).
In the case at hand, the arresting police officers had received word from a reliable informant that the defendants' automobile contained some marijuana. The officers kept the automobile, which was mostly parked outside the defendants' residence, under surveillance for over twenty-four hours in an effort to discover from whom they had purchased the alleged drugs. (Their testimony convincingly shows that during this time no use or disposition was made of the drugs in the locked trunk of the automobile.)

I.
I think that under the circumstances the warrantless search was not authorized. It is well settled that a search conducted without a warrant is per se unconstitutional, subject only to a few specific and well delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). One of these exceptions was recognized in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) where the Court allowed the search of an automobile based on probable cause without a warrant where it would be impractical to secure one because of the mobility of the vehicle and the ease with which it might be moved out of the jurisdiction. The state in the instant case relies on this exception, arguing that it was impractical to secure a warrant at the time the car was stopped.
In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 1980-1981, 26 L.Ed.2d 419 (1970), the Court further explained the Carroll exception: "Neither Carroll, supra, *462 nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in Carroll and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." (Italics ours.)
And in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 ((1971), the Court reiterated that exigent circumstances justify the warrantless search of an automobile stopped on the highway, adding that the opportunity to search must be fleeting. In that case, the Court held that since "The police had known for some time of the probable role of the Pontiac car in the crime . . . the opportunity for search was thus hardly `fleeting'." 91 S.Ct. at 2035.
To accept the state's argumentthat whenever the exigent circumstances occur, regardless of when probable cause of the search arises, a search may be had without a warrantwould undermine the policy of the Fourth Amendment that interposes judicial determination of probable cause between police activity and individual privacy. It therefore seems to me that the failure here to obtain a warrant where such opportunity existed rendered the subsequent search unconstitutional and the fruits thereof inadmissible.
The bills of exceptions therefore present reversible error.

II.
Further, I cannot believe that the conduct here punished by penitentiary terms of 3½ and 5 years respectively was that intended by the legislature to constitute the felony of possession of a controlled dangerous substance with intent to distribute. La. 40:966(A)(1). It seems to me that under the facts, possession may have been proved, which might subject these young people to misdemeanor prosecution, with the chance of having a conviction being subsequently erased from their records and avoiding going into their mature years with a felony record.
They were stopped as they were leaving the parish, going together on a camping trip for the weekend. In their personal luggage, in a closed suitcase in the locked trunk, were seven one-ounce bags of marijuana. The young lady had five marijuana cigarettes in her purse. They were subject to punishment, of course, for the possession of this illegal substance for their personal use, so long as the legislature sees fit to designate this as a crime.
However, the felony constituting possession with intent to distribute was designed to penalize true dope-peddlers, i.e., commercial distributors especially of hard drugs.
There is no evidence at all that these young people possessed the marijuana in question for any other purpose than their personal use. The police officer stated that marijuana is commonly sold in oneounce bags, such as the seven possessed by the defendants; but of course the customers of the sellers would also have bought them in such one-ounce bags. The police surveillance of these two young people's house and cardesigned primarily to find out from whom they boughtshowed absolutely no evidence that they did anything other than live together. There was no activity of distribution whatsoever by them during the rather extended surveillance. There is absolutely no evidence of commercial activity or even of sharing of the marijuana in their possession.
In my view, the prosecution for possession with intent to distribute applies the *463 felony-statute in a manner never intended by the legislature. The legislature intended to punish the conduct shown by the present record as the misdemeanor of possession. It is a perversion of the legislative intent to send these young people to the penitentiary on a felony charge designed to punish commercial distributors.
I am not certain this issue is clearly raised by the motion for a new trial. The ground upon which such was sought was that there was no evidence at all to support a conviction because the evidence had been illegally seized. Had the evidence been legally seized, I am inclined to the view that there is no evidence at all of intent to distribute proven in the record, and that therefore a motion for a new trial lay on the ground that no evidence at all had been produced to prove such specific intent as required by law.
Therefore, primarily for the reasons stated in I above, I dissent from affirmance of this conviction; but with reservations as to whether a reversal might not be required also for the reasons stated in II above.
BARHAM, Justice (dissenting from refusal to grant rehearing).
I concur in the reasons assigned by Mr. Justice Tate in his dissent under his discussion of the constitutionality of the search and seizure in this case. He is correct in his discussion of the holdings in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), reh. denied, and Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), reh. denied.
In Carlton v. Estelle, 480 F.2d 759 (1973), the Fifth Circuit used the language which I believe correctly states the principle adhered to by the United States Supreme Court:
"* * * Thus cases do arise in which a warrantless search of a car is impermissible, either because the police had probable cause for search before their arrival on the scene, knowledge of factors bearing upon the likelihood of future movement, and time enough and assurance enough to obtain a warrant beforehand * * *". (Emphasis supplied.)
The court in that case stated it permitted the warrantless search because:
"* * * At the point of arrest they [the police] had missed no genuine opportunity to obtain a valid warrant to search the car * * *".
The majority of this Court keeps saying that we, the Louisiana Supreme Court, do not follow the jurisprudence in the United States Fifth Circuit Court of Appeals. The majority errs in failing to give consideration to the interpretations of law given by the United States Fifth Circuit in federal constitutional matters because in that field of law not only the United States Courts of Appeal but also every United States District Court has the superior power over state courts in interpreting and applying the United States Constitution.
The United States Supreme Court seldom grants review in criminal cases which have come through our Court on appeal. Most of the federal jurisprudence affecting Louisiana criminal cases comes out of the federal district courts and the United States Fifth Circuit Court of Appeals. In the final analysis, often the criminal law of this State on constitutional issues is that law as expressed by the United States Fifth Circuit or even by a United States District Court. Over the last ten years there have been far more reversals of lower court judgments by these courts than by both our Court and the United States Supreme Court. These reversals are just as effective as if they had come from a court of last resort.
We do a great disservice to the trial courts when we attempt to tell them what the United States Constitution requires of Louisiana courts, without inquiring as to what is required by courts superior under *464 the Constitution in the application of federal constitutional law. If we continue to interpret the law contrary to the federal system's interpretation on constitutional issues, we simply encourage the lower courts to commit further error and we permit more defendants to be freed from convictions by the federal courts in the future because of the state lower courts' reliance upon our erroneous interpretation of constitutional law.
The United States Supreme Court and the Fifth Circuit Court of Appeals cases cited dispose of this case contrary to the majority holding. [ respectfully dissent from the refusal to grant a rehearing.