370 So.2d 525 (1979)
STATE of Louisiana
v.
Michael T. BROWN.
No. 63260.
Supreme Court of Louisiana.
April 9, 1979.
Rehearing Denied May 21, 1979.
*526 L. Paul Gianfala, Church Point, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Jack Derrick Miller, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant Michael Brown was charged with second degree murder, La.R.S. 14:30.1, convicted by a jury of manslaughter, La.R.S. 14:31, and sentenced to twenty-one years imprisonment at hard labor.[1]
In this appeal defendant argues seventeen of the twenty assignments of error filed below. We have determined that only one of these assignments merits discussion.[2] Finding no reversible error, we affirm.
After drinking heavily throughout the day of May 25, 1977, the defendant and his half-brother, Eli Guillory, stopped at the rural mobile home of the victim, a relative of Guillory. The defendant and Guillory requested ice for their drinks, and, after the victim complied with this request, she was thrown into the back seat of the car, repeatedly forced to have sexual relations, and shot three times in the head with a .22 caliber pistol. Her nude body was left on an isolated rural road bridge several miles from Rayne, Louisiana.
The victim's absence was reported to the police by her husband later that night, and the body was discovered by a motorist, who notified the police. The coroner extracted three small caliber bullets from the victim's body, and a small piece of foam rubber was found in her pubic area. This information was sent out to all investigating officers by radio.
Several hours later, while a number of deputies were searching for clothing or other items of evidence near the bridge where the body had been found, the defendant drove up "weaving all over the road". The deputies stopped the defendant and ordered him to get out of his car. As one of the officers stood near the car talking with the defendant, he casually directed his flashlight into the car and saw 2 boxes of .22 caliber bullets on the dashboard, a small caliber pistol with its handle sticking up near the console next to the driver's seat, and pieces of broken foam all over the back seat of the car. The significance of these items was immediately apparent to the officers *527 at the scene, and they reported their findings to the detectives in charge of the investigation, who were then searching the area near the victim's home. A detective arrived on the scene within a matter of minutes and removed the pistol from the automobile.
The automobile itself was later impounded, and, after securing a search warrant, portions of the foam located in the back seat were taken to a technician for analysis. The .22 caliber pistol was determined to be the weapon which fired the bullets that killed the victim, and the foam found in the automobile was similar in kind to that found in the pubic region of the victim.
By assignment of error number 18, defendant argues that the trial judge erred in denying his pre-trial motion to suppress the .22 caliber pistol.
The State contends that the bullets, pistol and foam particles were lawfully seized under the "plain view" doctrine. In order for the doctrine to be applicable, there must have been a prior justification for an intrusion into a protected area, in the course of which evidence was discovered inadvertently, and it must have been immediately apparent without close inspection that the items were evidence or contraband. State v. Parker, 355 So.2d 900 (La.1978).
When an officer inadvertently observes evidence of a crime from a vantage point that does not intrude upon a protected area or when that protected area is entered with prior justification, there is no violation of the search warrant rule because there has been no "search". State v. Parker, supra. See also State v. Bourg, 332 So.2d 235 (La.1976); State v. Thomas, 310 So.2d 517 (La.1975); State v. Terracina, 309 So.2d 271 (La.1975). However, if the evidence is itself within a protected area, the officer may not enter the area to effect the seizure without first obtaining a warrant absent, exigent circumstances or another exception to the warrant requirement.
In the instant case the officer did not intrude upon the defendant's protected area by flashing his light toward the automobile as he stood beside it talking with the defendant. Although there were other officers in the area, the deputy was entitled as a precaution for his own safety to a general visual survey of the vehicle from his position outside to determine if there was anyone in the car. The evidence solidly supports a finding that the officer was making such a general survey when he sighted the items rather than a close inspection for evidence. Consequently, the conclusion that the evidence was discovered inadvertently without an intrusion into a protected area is well founded upon the record.
Likewise, the finding that the items were immediately recognizable as evidence without close inspection was reasonable. At the time the bullets, pistol and foam rubber particles were observed in the automobile, the officer knew that a small caliber pistol had been used to commit the crime, and that a foam rubber particle was found on the victim's body. The appearance of these objects at the very same isolated spot on a country road where the victim's body had been discovered only hours before was sufficient to give the officers probable cause to believe that the items were evidence relevant to the case under their investigation.
The defendant correctly contends, however, that the State must educe additional proof to justify the subsequent seizure of the .22 caliber pistol found in the automobile. In State v. Guzman, 362 So.2d 744, (La.1978), this Court set forth the "automobile emergency" exception to the federal and state constitutional warrant requirements. Drawing on the opinion of the Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) we stated:
"The cases set out two conditions that must be satisfied before a warrantless search of a movable vehicle is authorized: (1) there must be probable cause to believe that the vehicle contained contraband or evidence of a crime; and (2) there must be `exigent circumstances' requiring an immediate warrantless search, *528 i. e., the impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants, if not arrested, or by someone else. An immediate warrantless search is, therefore, constitutionally permissible when `the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.' Chambers v. Maroney, supra, 399 U.S. at 51, 90 S.Ct. at 1981, 26 L.Ed.2d at 428."
See State v. Wilkens, 364 So.2d 934 (La.1978).
Under the circumstances of the instant case there was an exigency justifying an immediate seizure of the pistol. Abandonment of the vehicle at the scene of the apparent murder presented a significant possibility that its contents never may have been found again. It was the duty of the officers to promptly conduct the arrested defendant to the nearest jail or police station and cause him to be booked. La.C.Cr.P. art. 228. The officers would have been reasonable in assuming that others who may have been involved in the crime could attempt to move the car or the evidence. Accordingly, there was no practical alternative available to the officers under the exigent circumstances other than an intrusion into the arrestee's privacy to the extent necessary to preserve the evidence which they had probable cause to believe was located inside the automobile. The fact that the entire automobile was later impounded after a search warrant was obtained does not render the officer's initial limited intrusion unreasonable or the circumstances under which it was made less than urgent.
Accordingly, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Defendant was also indicted with the manslaughter of a fertilized implanted fetus in the womb of his victim in the present case. The defendant plead guilty to the manslaughter of the fetus and was sentenced to ten and one-half years imprisonment at hard labor. A separate appeal from defendant's manslaughter conviction and sentence has been granted by this court. 370 So.2d 528 (La.1979).
[2] We have reviewed assignments of error numbers 1-6, 8-13, 15, 17, and 19-20, and have determined that they present no reversible error.