407 So.2d 1208 (1981)
STATE of Louisiana
v.
Liza LITTLETON, Joseph Lombardo, and Edward Mullen.
No. 81-K-1495.
Supreme Court of Louisiana.
December 14, 1981.
*1209 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Spencer W. Kimball, II, Louise S. Korns, Asst. Dist. Attys., for plaintiff-relator.
Wayne Douglas Mancuso, Robert Fleming, Jr., of Kiefer, Glorioso & Fleming, Bernard Jack Usprich, New Orleans, for defendants-respondents.
CALOGERO, Justice.
In this matter the state attacks the ruling of the trial judge suppressing evidence which was the product of warrantless seizures. Because we find that the seizures, although warrantless, were nonetheless reasonable and fell within well established exceptions to the warrant requirement, we reverse the ruling of the trial judge.
Defendants Liza Littleton, Joseph Lombardo and Edward Mullen were charged by bills of information with two counts of receiving stolen property in violation of La.R.S. 14:69. Defendants entered pleas of not guilty to both counts and filed a motion to suppress evidence seized pursuant to an allegedly unconstitutional search.[1] After a hearing on the motion, the trial judge ordered the evidence suppressed. We granted the state's application for certiorari to consider that ruling. 401 So.2d 1203 (La.1981).
Sgt. Daniel O'Neil of the New Orleans Police Department was the sole witness at the hearing on the motion to suppress and gave the following account of the events which culminated in the seizure. On February 11, 1981, two detectives from Lafourche Parish contacted the New Orleans Police and requested assistance. According to the Lafourche detectives, two businesses in that parish had been burglarized and a New Orleans woman had been in both business places prior to the burglaries.
Defendant Liza Littleton had purchased an air filter at one of the businesses and had given a New Orleans address. Shortly thereafter in the other business establishment, Littleton had asked to use the restroom. The Lafourche detectives wanted to question her regarding whether the restroom *1210 window had been open before she used the facility because they believed that the burglars had gained entrance through that window. Littleton had been driving a pick-up truck when she left the two business places in Lafourche Parish.
The Lafourche detectives went to the address given by Littleton and found that it was beside and/or to the rear of the plant premises of a Halter Marine shipyard on U.S. Highway 90 just past the intersection with Louisiana Highway 11. When the detectives arrived at the location they saw the pick-up truck which Littleton had reportedly been driving and observed exposed in the open bed of the pick-up property stolen in the burglaries.[2] This truck was parked in a hangar and the stolen property was being unloaded from the truck onto the floor of the hangar. At this point the Lafourche officers contacted the New Orleans Police. Sgt. O'Neil and another N.O.P.D. officer responded to the request for assistance. The two sets of officers met at the Halter Marine security office which is located at the entrance to the Halter Marine premises on Highway 90. After a few minutes in the security office, the police returned to their vantage point on or alongside Highway 90 to observe the activity in the hangar.
Sgt. O'Neil estimated that the observation continued 28 to 40 minutes. The officers used binoculars to aid in the observation, but Sgt. O'Neil testified that the activity and property could be seen without them.[3] The pick-up truck with the stolen property was in the hangar with the back of the truck facing the highway. There was no wall on the end of the hangar nearest the highway and the hangar opening was 30 to 40 feet wide. The police also saw a second pick-up truck parked outside the hangar.
The police had been observing the activity in the hangar for about 40 minutes when this second pick-up truck driven by defendant Lombardo left the hangar area and headed toward Highway 90. In the back of this truck the police had already observed a riding lawn mower of the type which had been reported stolen. Two of the police (one from New Orleans and one from Lafourche) stopped Lombardo as his truck departed the property and was pulling onto Highway 90, and placed him under arrest.
The two other policemen thereupon drove to the hangar and parked their car just outside the hangar and behind the pick-up truck so that it could not be moved. Sgt. O'Neil stated that the relationship between Halter Marine and Trans-Gulf Airlines, owner of the hangar was not clear, but they learned that there was a "working relationship between Trans-Gulf and Halter. Trans-Gulf operates that with a lease, something like that." Sgt. O'Neil also stated that the hangar was on Halter Marine's property. From Barbara Johnson, resident manager of Trans-Gulf Airlines, the police secured permission to enter and search the hangar.
Much of the stolen property was spread on the floor of the hangar. Some was in the back of the pick-up truck which belonged to defendant Mullen and other of it had been hidden by Mullen inside the hangar. Mullen retrieved the hidden property for the police. Ms. Johnson informed the police that Littleton was in the Trans-Gulf office located about 40 feet from the hangar.
The state concedes that there was no search warrant, but argues that the search falls within an exception to the warrant requirement. Defendant's position is that there was time for the police to have obtained a warrant and consequently their failure to do so mandates that the evidence seized without a warrant be suppressed.
It is well settled that warrantless searches and seizures are per se unreasonable *1211 unless they fall within a limited number of well delineated exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Malone, 503 So.2d 1234 (La.1981); State v. Denton, 387 So.2d 578 (La.1980). One of these exceptions is the "automobile emergency exception" which is based upon the existence of probable cause to search the vehicle and exigent circumstances which make it impracticable to secure a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Edsall, 385 So.2d 207 (La.1980); State v. Guzman, 362 So.2d 744 (La.1978).
In our opinion, the stop of Lombardo's truck and the seizure of the lawnmower (and a go-cart which was observed alongside it as the truck approached the police) from the bed of the truck falls within the scope of the "automobile emergency exception" to the search warrant requirement. The truck, in the bed of which was seen the stolen lawnmower and go-cart, was being driven from the hangar. Under these circumstances it was reasonable for the police to stop the truck and seize the lawnmower.
The observation of the stolen property which was located in the back of Mullen's truck and in the hangar was made from a public roadU.S. Highway 90, or the shoulder thereof. In this situation, there was technically no search, because there was no intrusion upon private property. State v. Brown, 370 So.2d 525 (La. 1979). Furthermore, whatever defendant's subjective expectation of privacy might have been, their expectation of privacy could hardly be characterized as one which society at large is prepared to recognize as reasonable. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Denton, supra. The open end of the hangar faced a public highway and the use of binoculars in a situation such as this does not violate the Fourth Amendment. In Denton, supra, we rejected the contention that the use of a "night scope" to aid night viewing violated the Fourth Amendment and specifically noted that we saw no difference between the use of the "night scope" and binoculars.
The police clearly had probable cause to believe (in fact they were rather certain) that there was contraband in the truck bed and on the hangar floor. However, as we said in State v. Brown, supra: "[I]f the evidence is itself within a protected area, the officer may not enter the area to effect the seizure without first obtaining a warrant, absent exigent circumstances or another exception to the warrant requirement." 370 So.2d at 527.
In this regard, we note that some of the stolen property was in the bed of a pick-up truck parked inside the hangar. One truck carrying stolen goods had already departed from the area. The departure of the remaining truck might well have been imminent. It was not unreasonable for the police officers to have suspected that the stop and apprehension of Lombardo and seizure of his pick-up truck, occurring as they did only a short distance from the hangar and within the view of the hangar's occupants would alert the occupants of the hangar to the need to remove or at least hide the stolen property.[4] With these realities confronting them, the police acted in a reasonable fashion, considering the exigencies of the situation, in pulling their car behind Mullen's truck so that it could not be removed from the hangar, thus causing, effectively, a seizure of the truck.
Further, we observe that Sgt. O'Neil testified that the police received permission from the manager of Trans-Gulf Airlines before entering the hangar. Consent is another of the exceptions to the warrant requirement. Schneckloth v. Bustamonte, supra; State v. Packard, 389 So.2d 56 (La.1980). The consent need not have been given by the defendant, but may have been given by one who has common authority *1212 over the premises to be searched. State v. Wilkerson, 367 So.2d 319 (La.1979). The resident manager of Trans-Gulf Airlines had sufficient authority over the hangar to consent to the search. Under these circumstances the police did not need a warrant to enter and search the hangar and seize the stolen property located therein.
Once the police had "seized" Mullen's pick-up truck by pulling the police car behind it and had obtained consent to enter the hangar in which the truck was located, there was no constitutional impediment to the seizure of the stolen property located in the open bed of the truck. This property was not in any manner concealed from view and defendants could have no reasonable expection of privacy. Thus, the need for a warrant to seize the stolen property was obviated. Robbins v. California, ___ U.S. ____, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981); Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed. 235 (1979); Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).
In summary, the existence of exigent circumstances allowed the police to seize the stolen property which was located in the back of Lombardo's truck. Exigent circumstances also permitted the police to seize Mullen's truck by preventing its departure from the hangar. The consent of the resident manager of Trans-Gulf Airlines for the police to enter and search the hangar places that search and seizure outside the warrant requirement of the Fourth Amendment. Finally, once inside the hangar with consent and having permissibly seized Mullen's truck, there was no need for the police to obtain a warrant to seize the stolen property which was clearly visible, and accessible, in the open bed of the truck.
Having decided that the warrantless seizures (and search of the hangar for the non-visible property) were justified under exceptions to the warrant requirement, we must now address defendant's argument that the failure of the police to attempt to obtain a warrant immediately upon seeing the stolen property precludes the state from relying upon those exceptions. In State v. Tant, 287 So.2d 458, 461 (La.1973), we said:
Neither the Constitution of the United States nor the jurisprudence requires that a police officer immediately obtain a search warrant upon his gaining probable cause for its issuance. Nor for that matter is there any impropriety as far as a defendant's constitutional rights are concerned if an officer with probable cause desists indefinitely from securing a warrant, absent an illegal search and seizure.
We further stated in Tant that the only pertinence delay in securing a warrant would have upon a search and seizure, would be that it would be a violation of constitutional rights for police deliberately to set up surveillance and await exigent circumstances to circumvent the requirement that an impartial magistrate pass upon probable cause.
As we stated previously, in the case at bar the police had probable cause to obtain a warrant after viewing the stolen goods in the hangar and in the back of the pick-up truck in the hangar. In Tant, supra, the surveillance lasted 24 hours after the police had obtained probable cause and we did not find that to be impermissibly long. In the case at bar, the police observation of the activity lasted less than an hour.
Six months after this Court decided Tant, supra, the United States Supreme Court rendered its decision in Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), holding that the right to search with probable cause, and the reasonableness of seizing a car under exigent circumstances are not foreclosed if the warrant is not obtained at the first practicable moment. According to the Cardwell court: "Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforseeable and arises only at the time of arrest." 417 U.S. at 595, 94 S.Ct. at 2472.
The police in the case at bar did not delay getting a warrant to circumvent the requirement that an impartial magistrate pass upon the existence of probable cause. Incidentally the police did, rather certainly, *1213 have probable cause. And we do not conclude from the record that the police were waiting for exigent circumstances to arise so as to avoid having to get a search warrant. We are impressed by the fact that the Lafourche detectives went to Littleton's address for the purpose of questioning her because she had been in both of the businesses shortly before the burglaries occurred. They had no reason to anticipate what they later were to find. Their finding the stolen property at that location was unexpected.
The seizures, and search of the hangar for the concealed tools, fell within well established exceptions to the requirement that police obtain a warrant before searching and seizing property. The short time spent in observing the activity in the hangar before the exigency arose does not render the seizures constitutionally impermissible.

DECREE
For the foregoing reasons, the ruling of the trial judge that the evidence be suppressed is reversed and the case remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] The motion to suppress contained in the record appears to have been filed on behalf of defendant Mullen alone. However, the minute entry reflects that the trial judge sustained the motion for all three defendants. The transcript of the hearing on the motion shows that attorneys for all three defendants participated in the hearing. In State v. Bergeron, 371 So.2d 1309 (La.1979), we held that the provision of La.C. Cr.P. art. 842 that an objection made on behalf of one defendant shall be presumed to have been made by all defendants applies by analogy to written motions by a co-defendant. The ruling to suppress the evidence will inure to the benefit of all defendants. We therefore treat the ruling as applying to all three defendants.
[2] The unusual nature of much of the stolen property facilitated its identification. Sgt. O'Neil described some of it as "the biggest hand tools I ever saw, electric drills ten times normal size, ratchets, handless mechanical tools, four feet in height and tremendous sockets, big tools." A go-cart and several gasoline lawn mowers had also been stolen.
[3] Sgt. O'Neil said that it might have been dark but that the hangar area was well lighted.
[4] While the only road access to U.S. Highway 90 went past the location of the police, there were other buildings near the hangar, including the Trans-Gulf office, and there was a navigable waterway behind the hangar.