378 So.2d 396 (1979)
STATE of Louisiana
v.
John LEWIS and Reyland Berry, Sr.
No. 65011.
Supreme Court of Louisiana.
December 13, 1979.
Robert Barnard, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.[*]
The principal question in this case concerns the admissibility of evidence seized from an automobile, which was parked outside a defendant's apartment at the time he and his co-defendant were arrested, before the automobile was impounded as evidence and taken to a police station. We find no violation of the defendants' Fourth Amendment rights to be secure against unreasonable searches and seizures.
Defendants, John Lewis and Reyland Berry, Sr., were convicted by a jury of armed robbery, La.R.S. 14:64, and found to be habitual offenders. Lewis was sentenced to serve forty-five years at hard labor, and Berry was sentenced to serve forty years at hard labor. On this appeal defendants argue eleven assignments of error. *397 Having reviewed all of the assignments of error, only assignment number one deserves extended treatment in this opinion. None of the assignments presents reversible error; therefore, we affirm the convictions and sentences.
Rene Castillion, the victim of the armed robbery, was at the time of the incident a route salesman for the Metropolitan Cigarette Company. His duties with that company were to fill vending machines located in the city of New Orleans with cigarettes and collect the money from each machine. On January 23, 1978, Castillion was robbed of cigarette machine money he had collected as he left Moon's Lounge on Old Gentilly Road. He was approached outside Moon's by a man wearing a mask, whom Castillion described as being 6'2" or 6'3" and weighing about 175 pounds. According to Castillion, the robber was wearing a green army jacket which had a round patch on the shoulder with a green circle and a stripe in its center. He testified that the robber was wearing light colored pants and black leather lace-up shoes. After a brief struggle, the robber struck Castillion on the side of the head with a pistol, grabbed the white burlap Metropolitan Cigarette bag containing the money and ran.
Jerry Hall, a dispatcher for a freight company located across the street from Moon's, witnessed the robbery from his place of employment. Earlier, Hall's fellow employees called his attention to a stranger standing in the company parking lot beside a yellow Chevy II which had orange primer spots and an open trunk. As Hall watched, the stranger signalled to a masked man across the street, who robbed Castillion as he came from Moon's Lounge. As the robber fled, Hall got the license number from the Chevy II and turned away to call the police. When he looked again the robber, the yellow Chevy II and the stranger were gone.
The police officers who responded to Hall's call found a car having a license number and description which matched those given them approximately seven blocks from Moon's Lounge. By questioning people in the neighborhood the officers learned that the Chevy II's owner lived in an upstairs apartment nearby. When one of the policemen knocked on the door, defendant Berry opened the door revealing to the officers' view a handgun, a money bag and some coins lying on a coffee table. Defendant Lewis, who also came into the officers' view when the door opened, ran to the back of the apartment, but was soon captured by one of the policemen. Berry was arrested immediately thereafter.
The officers requested and received consent to search the apartment from one of its residents, Mary Atkinson, Berry's common-law wife. Their search yielded coins, Castillion's Metropolitan Cigarette Company money bag, and a handgun.
After the defendants were placed under arrest, another officer brought Castillion and Hall to the apartment to see if they could identify either of the suspects. Castillion identified Lewis as the robber by his height, weight, build, and clothing. Hall positively identified Berry as the stranger in the parking lot who had signalled to the robber.
After the arrests and identifications had been made the police officers made arrangements for defendant's vehicle to be towed to a police station. Prior to the arrival of the wrecker, an officer standing beside the automobile saw a write t-shirt lying on its front seat. He was able to see that two eye holes had been cut from the garment. The officer seized the t-shirt mask as evidence.
ASSIGNMENT OF ERROR NO. 1
The defendant contends that the trial court erred in denying the defense motion to suppress the white t-shirt mask seized from defendant Berry's car in violation of the defendants' Fourth Amendment rights to be secure against unreasonable searches and seizures.
In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Supreme Court has insisted upon probable cause as a minimum requirement *398 for a reasonable search permitted by the constitution. As a general rule, it has also required the judgment of a magistrate on the probable cause issue and the issuance of a warrant before a search is made. Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendmentsubject only to a few specifically established and well delineated exceptions. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
In a line of decisions, beginning with Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Supreme Court has recognized a so-called "automobile exception" to the constitutional requirement of a warrant. Under the exception, a search warrant is unnecessary where the police have probable cause to search an automobile stopped on the highway and the circumstances require immediate action; the underlying reasons for the exception are that "the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).
Because of the preference for a magistrate's judgment, it could be argued that, even though the police have probable cause to search and there is danger the vehicle and its contents will disappear, only the immobilization of the car should be permitted until a search warrant is obtained. This argument was recognized and rejected, however, by the Supreme Court, which stated in Chambers v. Maroney:
"[A]rguably, only the `lesser' intrusion is permissible until the magistrate authorizes the `greater.' But which is the `greater' and which is the `lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." 399 U.S. at 51-52, 90 S.Ct. at 1981.
This Court has also applied the Carroll doctrine and has not required a search warrant in cases falling under the "automobile exception." State v. Wilbourn, 364 So.2d 995 (La.1978); State v. Guzman, 362 So.2d 744 (La.1978); State v. Lain, 347 So.2d 167 (La. 1977); State v. Williams, 347 So.2d 231 (La. 1977); State v. Tant, 287 So.2d 458 (La. 1973).
Neither Carroll nor any other case in the Supreme Court requires or suggests, however, that in "every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords." Chambers v. Maroney, supra, 399 U.S. at 50, 90 S.Ct. at 1981. See also State v. Colvin, 358 So.2d 1250 (La.1978); State v. Parker, 355 So.2d 900 (La.1978). Furthermore, a clear rule for determining when the police may invoke the automobile exception has yet to be fashioned by a majority of the high court. A plurality in Coolidge stated that the lack of a warrant invalidated a search of a car after it was seized from the defendant's driveway under circumstances in which there was no possibility that the car would be moved or any evidence destroyed. Therefore, "no possible stretch of the legal imagination [could make the case into one] where `it [was] not practicable to secure a warrant.' "Coolidge, supra, 404 U.S. at 462, 91 S.Ct. at 2036. A different plurality in Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), however, approved a warrantless seizure of an automobile for the purpose of inspecting its exterior and tires, and obtaining paint scrapings, emphasizing that the auto, unlike the Coolidge car, "was seized from a public place where access was not meaningfully restricted." 417 U.S. at 593, 94 S.Ct. at 2470.
*399 Nevertheless, though the automobile exception is uncrystalized, we think the facts of the present case bring the search here within its ambit. Probable cause to search the auto existed because it was identified by description and license number as the likely get-away car, it led to the apprehension of the defendants and recovery of fruits of the crime, and it contained the robber's mask, plainly visible from the outside, and possibly additional contraband. The automobile was parked in a public place, a city street outside defendant Berry's apartment. It was therefore accessible to anyone who might have a reason to move it or remove evidence from it, including defendant Berry's common-law wife whom the police had no probable cause to arrest and allowed to remain at the apartment. Thus, the officers were faced with exigent circumstances requiring that they elect one of two courses "reasonable under the Fourth Amendment," Chambers, supra, 399 U.S. at 52, 90 S.Ct. 1975, either immobilize the car until a warrant is obtained or carry out an immediate search without a warrant. Under all of the circumstances, the election of the latter reasonable course by the officers does not require that we invalidate their search.
The remaining assignments of error are also without reversible merit for reasons set forth in a publicly available, but unpublished, appendix to this opinion. In our opinion, the appendix does not contain any legal interpretations or applications of sufficient novelty to warrant publication.
Accordingly, the defendants' convictions and sentences are affirmed.
AFFIRMED.
NOTES
[*] The Honorable Jesse N. Stone, Jr. participated in this decision as an Associate Justice ad hoc.