387 So.2d 1103 (1980)
STATE of Louisiana
v.
Alex STEWART.
No. 65901.
Supreme Court of Louisiana.
April 7, 1980.
Concurring Opinion September 24, 1980.
*1104 Walter L. Sentenn, Jr., Robert Barnard, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
de la HOUSSAYE, Justice Ad Hoc.
The principal issue presented for decision in this case pertains to the admissibility of evidence used in a bank robbery seized from an automobile which was parked on a street outside defendant's residence at the time defendant was arrested, before the automobile was impounded as evidence. The other two assignments of error include denial of the trial court to suppress an in-field identification, and in allowing a state witness to testify who had violated a sequestration rule.
Defendant Alex Stewart was charged with armed robbery in violation of La.R.S. 14:64. A jury returned a verdict of guilty of simple robbery (La.R.S. 14:65). Defendant was found to be a multiple offender (La.R.S. 15:529.1) and was sentenced to serve seven (7) years in custody of the Department of Corrections with credit for time served. On this appeal, defendant argues seven assignments of error; three of which we find necessitate our attention. None of these assignments presents reversible error; we therefore affirm the conviction and sentence.
The robbery of the Carrollton Branch of the Bank of New Orleans occurred May 9, 1978 when defendant Stewart entered and presented a note to the teller demanding money. He was given $2,715 in "bait money" (money with serial numbers kept on *1105 separate list by the bank) and fled in a copper-colored Chrysler parked at the curb.
A citizen, John Eaves, who was driving down Carrollton Avenue, noted that defendant was being pursued by a large number of persons. Becoming suspicious, he followed the Chrysler to Spruce Street, where he found it parked on the street in front of 7404. Eaves notified the police.
The police came and questioned several people in the neighborhood as to the ownership of the vehicle. From the information gleaned, they approached 7404 Spruce where they were apparently admitted by a Mr. Gerald Thomas, known to the officers from past offenses, who communicated that no one else was there. One of the officers heard a noise and went to investigate, finding defendant in the process of shaving off his beard. Defendant was placed under arrest for armed robbery. Thomas was arrested as accessory after the fact.
Minutes after the arrest, two detectives arrived, looked into the Chrysler, and entered the Thomas residence. Permission was given by defendant's sister to search the residence, and $2,715.00 in U.S. currency was recovered from a towel in the bathroom. A revolver was found under a mattress.
Following their arrest, Thomas and Stewart were taken to the bank for a possible identification. The teller and two other eye witnesses positively identified Stewart, although he had changed clothes.
One of the officers seized a shirt, hat, and a pair of sunglasses from the automobile, which was to be impounded as a fruit of the crime.
Argument No. I
(Assignment of Error No. 2)
Defendant contends that the trial court erred in refusing to suppress the articles seized from the vehicle during a warrantless search, claiming such actions run awry of his Fourth Amendment right to be secure against unreasonable searches and seizures.
The U.S. Supreme Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the constitution. As a general rule, it has also required the judgment of a magistrate on the probable cause issue and the issuance of a warrant before a search is made. Searches conducted outside the scope of the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically and well delineated exceptions. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Lewis, 378 So.2d 396 (La.1979).
Under the "automobile exception," a search warrant is unnecessary where police have probable cause to search an automobile stopped on the highway and the circumstances require immediate action, beginning with Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The underlying reasons derive from the mobility of the car, that the occupants have been alerted, and that the time necessary to obtain a warrant may mean that the contents of the car may never be found. Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).
The present case is virtually identical with the situation presented in State v. Lewis, supra, wherein the investigating officers, awaiting the arrival of a police tow truck following defendant's arrest, noticed a white T-shirt lying on the front seat. An officer was able to see that eye holes had been cut from the garment. He seized the shirt as evidence. This Court reasoned:
"Probable cause to search the auto existed because it was identified by description and license number as the likely get-away car, it led to the apprehension of the defendants and recovery of fruits of the crime, and it contained the robber's mask, plainly visible from the outside, and possibly additional contraband. The automobile was parked in a public place, a city street outside defendant Berry's apartment. It was therefore accessible to *1106 anyone who might have a reason to move it or remove evidence from it, including defendant Berry's common-law wife whom the police had no probable cause to arrest and allowed to remain at the apartment. Thus, the officers were faced with exigent circumstances requiring that they elect one of two courses `reasonable under the Fourth Amendment,' Chambers, supra, 399 U.S. at 52 [90 S.Ct. at 1981,], either immobilize the car until a warrant is obtained or carry out an immediate search without a warrant. Under all of the circumstances, the election of the latter reasonable course by the officers does not require that we invalidate their search."
Id. at 399.
The circumstances presented in the instant case are indistinguishable from Lewis. The car found outside the residence at 7404 Spruce Street had been followed from the scene of the robbery to that spot by a suspicious citizen. Further investigation and a search of the premises led to the arrest of defendant and recovery of the currency. Defendant admitted his perpetration of the robbery and even led the officers to the stolen cash and a gun. The sunglasses and suede hat coincided with eyewitnesses' accounts of defendant's apparel at the time of the robbery. These items were thus valuable evidence to be used to verify the earlier description of the assailant.
Further tracking Lewis, the vehicle here was parked on a public street, readily accessible to Thomas' common-law wife or other persons who might have a reason to move it or remove evidence from it. Thus, this case does not present a situation such as that faced by the Supreme Court in Coolidge v. New Hampshire, supra, wherein officers had known for weeks of the probable role played by a vehicle in the commission of a crime and yet had failed to obtain a search warrant.
The record is unclear as to whether the search was conducted before or after the impoundment. However, faced with the apparent exigent circumstances, it would appear, as in Lewis, that either an impoundment or an immediate search would be reasonable.
Argument No. II
(Assignment of Error No. 3)
In this assignment, defendant protests the trial court's refusing to grant his motion to suppress an in-field identification.
After the arrest, Stewart and Thomas were taken to the scene of the robbery where they were handcuffed and guarded by two non-uniformed officers. The bank employees and a customer present during the robbery were asked to view the suspects through the glass panels of the bank. A teller and a customer gave a positive identification from 25 feet. Ms. Baudier, the teller who was robbed, was able to identify Stewart upon closer examination of his facial features.
Defendant contends this sort of identification to have been impermissibly suggestive leading to a great likelihood of misidentification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
In reviewing the constitutional issue of the identification procedure, the Supreme Court in Brathwaite, supra, made a double inquiry;
1) "Whether the police used an impermissably suggestive procedure in obtaining the out-of-court identification" and 2) "whether, under all the circumstances, that suggestive procedure gave use to a substantial likelihood of irreparable misidentification." Manson v. Brathwaite, supra, 432 U.S. at 107, 97 S.Ct. at 2249.
A one-on-one confrontation between suspect and victim has been upheld when justified by the circumstances. State v. Dauzat, 364 So.2d 1000, 1001 (La.1978); State v. Kelly, 362 So.2d 1071, 1072 (La.1978); State v. Dunbar, 356 So.2d 956 (La.1978). One purpose of in-field identifications is the release of suspects who are innocent.
As to the first inquiry in the Brathwaite test, we find that defendant's being handcuffed at the time of his identification *1107 did not alone warrant a finding of undue suggestiveness. State v. Kelly, supra; State v. Dunbar, supra.
As for the second inquiry, ("the totality of circumstances" test), a subsequent in-court identification led again to defendant's positive identification as the assailant. In Manson v. Brathwaite, supra, the following criteria were established to determine whether such an identification, though suggestive, was reliable and thus not prejudicial to the accused:
1) Opportunity to view 2) Degree of attention 3) Accuracy of the description 4) Witness' level of certainty; and 5) The time between the crime and the identification.
The record reflects that the teller, Ms. Baudier, made an accurate identification of defendant as to his particular physical characteristics as well as to the brown and gold shirt, the suede hat, and sunglasses used during the robbery. The witnesses were quite certain of their identification which was made only one hour after the robbery which had transpired during daylight hours. Here, we do not find any suggestiveness to be prejudicial, for we find under the totality of circumstances that the identification was adequately supported by independent evidence. State v. Williams, 375 So.2d 364 (La.1979); State v. Stripling, 354 So.2d 1297 (La.1978).
A trial judge's determination of admissability is given great weight and will not be disturbed unless a preponderance of the evidence clearly so mandates. State v. Griffin, 336 So.2d 791 (La.1976).
Argument No. III
(Assignment of Error No. 5)
Defendant assigns as error the trial court having allowed the testimony of a state witness who had violated the court's sequestration order.
The witnesses had been ordered sequestered at the beginning of the trial. One state witness, John Eaves, had been allowed to leave and return later in the afternoon. Upon his return, he sat in the courtroom, and heard the testimony of one state witness, Ms. Baudier. After her testimony, Eaves was told to leave the courtroom, which he did. Defendant then objected to testimony by Eaves on the ground that he had been present during a portion of the trial in violation of the sequestration rule contained in La.C.Cr.P. Art. 764:
Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
The purpose of this article is to prevent witnesses from being influenced by the testimony of other witnesses. The trial judge, in his discretion, may determine the disqualification of a witness when a rule of sequestration has been violated. State v. Mullins, 353 So.2d 243 (La.1977); State v. Calloway, 343 So.2d 694 (La.1976); State v. Ardoin, 340 So.2d 1362 (La.1976). This ruling will not be disturbed absent a clear showing of abuse.
Mr. Eaves' testimony was relevant only to events which occurred outside the bank-he pursued the robber, and notified the police. Mr. Eaves could give no identification of the robber himself. On the other hand, the testimony of Ms. Baudier concerned only activities inside the bank. Therefore, Mr. Eaves' testimony was not influenced by that of Ms. Baudier. Thus, the trial judge did not abuse his discretion in allowing this witness to testify.
This assignment is without merit.
For the foregoing reasons, we find that defendant's arguments are without merit; therefore his conviction and sentence are affirmed.
Affirmed.
DENNIS, J., concurs with reasons.
*1108 DENNIS, Justice, concurring.
I wish to add additional reasons to the majority opinion's treatment of Assignment of Error Number Five. Although we have consistently recognized that the action to be taken in the face of a violation of a sequestration order rests within the sound discretion of the trial judge, the discretion in this regard is not unlimited. A defendant's rights to have compulsory process and to present a defense under either the federal or the state constitutions call for the operation of special considerations if it is his witness involved in the sequestration violation. The trial judge should exclude the witness only if the violation was brought about with the consent, connivance, procurement, or knowledge of the defendant or his counsel. See State v. Jones, 354 So.2d 530 (La.1978).