398 So.2d 1074 (1981)
STATE of Louisiana
v.
Charles Kenneth LAFLEUR.
No. 80-KA-2571.
Supreme Court of Louisiana.
May 18, 1981.
*1075 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. William Pucheu, Dist. Atty., A. Bruce Rozas, Richard W. Vidrine, Asst. Dist. Attys., for plaintiff-appellee.
Jules R. Ashlock, Ville Platte, for defendant-appellant.
*1076 PRICE, Justice Ad Hoc.[*]
The defendant, Charles Kenneth Lefleur, was indicted by the Evangeline Parish grand jury for the first degree murder of Michael Jason Mayer (La.R.S. 14:30). A jury of twelve found the defendant guilty as charged and he was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence in accordance with the recommendation of the jury. The defendant appeals giving nine assignments of error. We find no reversible merit to them and therefore affirm.
At the time of the events involved in this case, defendant was living in Ville Platte, Louisiana with Sandra Mayer and her three children. On Monday morning, May 14, 1979, defendant was picked up at his house by a co-worker for the drive to their job site in Lafayette. Defendant inquired of Gerald Johnson, the driver of the car, if he could place a large box of trash in the trunk to be dumped on the road. After placing the box in the trunk of Johnson's car, the two proceeded south on Louisiana Highway 29. After traveling a short distance Johnson asked defendant to remove the box from the trunk as the trunk would not close and he did not want the hinges on the trunk damaged. Approximately 2.5 miles south of Ville Platte, Johnson turned his car onto a blacktop parish road and told defendant to take the box out of his trunk. Defendant stated that he would rather not dump the box so close to the highway as it contained papers which would identify him as a "litter bug." When Johnson insisted, defendant took the box from the trunk and placed it by a telephone pole in tall grass at the intersection of the parish road and Highway 29. After picking up another co-worker the men proceeded to Lafayette.
Shortly after defendant left the house in Ville Platte at approximately 6:00 a. m., Sandra Mayer reported to neighbors that her 2½-year-old son, Jason, was missing from his bedroom, and that someone had apparently broken into the house and kidnapped him. The sheriff's department was called in and defendant was informed when he returned that evening that Jason was missing. Both defendant and Mayer told authorities that Jason had been put to bed the previous evening with the other two children. Neither of them mentioned the large box of trash defendant had hauled off Monday morning.
Dan Marcantel, investigator for the Evangeline Parish Sheriff's Department, testified that he found no evidence of forcible entry at the Mayer house. The back door in the bedroom where Jason slept was opened approximately 2½ feet when Marcantel examined the house. There were no visible signs of forcible entry at this door however, and there was a large wooden chest of drawers barring the door which Marcantel concluded had been moved from the inside.
The investigation continued throughout the week without result until Friday, May 18, when in the course of questioning Gerald Johnson, police investigators first learned of the box of trash defendant had left on the side of the road. Senior Trooper John Mouton of the state police testified that Johnson led him to the spot where the box had been placed the previous Monday morning. In addition to trash the box was found to contain the badly decomposed body of Michael Jason Mayer, later determined to have been killed by a severe blow to the head. Defendant and Sandra Mayer were arrested later that day in connection with the killing.
ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court erred in failing to order the indictment against him reduced from first degree murder to second degree murder. Defendant contends that the presence of an aggravating circumstance is an essential element of the *1077 crime of first degree murder, and since no aggravating circumstance was attendant to the crime in question, the indictment should have been quashed or reduced to second degree murder.
At the time of the subject offense La.R.S. 14:30 defined first degree murder as "the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm." Defendant relies on this court's decision in State v. Payton, 361 So.2d 866 (La.1978) wherein it was held that the legislature had impliedly amended the first degree murder statute to require an aggravating circumstance. This holding was necessitated by a 1977 Act (Acts 1977, No. 121, § 1) which defined second degree murder, in part, as:
The killing of a human being when the offender has a specific intent to kill, under circumstances that would be first degree murder under Article 30, but the killing is accomplished without any of the aggravating circumstances listed in Article 905.4 of the Louisiana Code of Criminal Procedure.
Payton held that this amendment by implication redefined first degree murder as a specific intent homicide accomplished with a statutorily prescribed aggravating circumstance.
Defendant contends that the first degree murder statute applicable in Payton was in force at the time of the instant offense, and therefore, the same reasoning should apply.
This contention is without merit since the legislature, by subsequent amendment, deleted subsection B of La.R.S. 14:30.1 which was the source of the implied amendment rationale. As in State v. Perkins, 375 So.2d 1179 (La.1979) and State v. Martin, 376 So.2d 300 (La.1979) an aggravating circumstance was not an essential element of first degree murder at the time of the subject offense.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 2
Defendant contends that since no evidence was introduced at the guilt determination phase of the trial which would indicate that the homicide was committed in an atrocious, cruel, or heinous manner, the trial court erred in allowing the state to seek the death penalty and introduce photographs of the dead child's body at the sentencing hearing. The defense contends that the pictures were inflammatory in that they did not show how the murder was accomplished, but simply depicted a badly decomposed body.
These photographs were not introduced until the sentencing phase of the trial at which time the defendant's guilt had already been conclusively determined. In the course of their deliberations in the sentencing hearing, the jury failed to find an aggravating circumstance and recommended life imprisonment. Since the photographs were not introduced at the guilt determination phase of the trial, and the jury subsequently rejected any finding of heinousness, the defendant was not prejudiced by these pictures. Likewise, the jury's rejection of the death penalty in favor of the only alternative available to them[1] renders defendant's contention that the state should have been forbidden to seek the death penalty moot.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial court erred in permitting the state to announce at the inception of trial that it sought the death penalty on the basis of the "atrocious, cruel or heinous manner in which the alleged murder was committed because this criteria had earlier been declared unconstitutional by the Supreme Court."
Examination of the record reveals that the only place prior to the sentencing hearing where the state mentioned the death penalty to the jury was during the *1078 course of voir dire examination of prospective jurors when they were asked whether they could return the death penalty if they were convinced beyond a reasonable doubt that the crime was committed in a particularly atrocious, heinous, or cruel nature. This is a legitimate question inasmuch as a juror who could not recommend the death penalty under such circumstances is subject to a challenge for cause by the state. La.C. Cr.P. Art. 798; Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
Defendant mistakenly relies on State v. Payton, supra, for his contention that the aggravating circumstance now listed in La.C.Cr.P. 905.4(g) (the offense was committed in an especially heinous, atrocious, or cruel manner) is unconstitutional. Payton did hold that such language was too vague to serve as a constitutionally adequate element of a criminal statute, but at the same time recognized the appropriateness of such considerations in sentencing:
... Moreover, although the question of whether the crime was committed in an especially heinous, atrocious or cruel manner is an acceptable factor, among others, to be considered for purposes of sentencing. Gregg v. Georgia, 428 U.S. 153, at 201, 96 S.Ct. 2909, at 2938, 49 L.Ed.2d 859; Proffitt v. Florida, 428 U.S. 242, at 254-6, 96 S.Ct. 2960, at 2967-2968, 49 L.Ed.2d 913, these terms are too vague to serve as constitutionally adequate elements within the definition of a criminal offense. 361 So.2d at 871.
This assignment lacks merit.
ASSIGNMENTS OF ERROR Nos. 4, 5, and 6
By these assignments defendant contends his constitutional guarantees of due process and confrontation of witnesses were violated when the trial court ruled that his defense attorney had failed to lay the proper foundation for impeaching the testimony of Sandra Mayer by introducing evidence of a prior contradictory statement. At the close of the defense cross-examination of Mayer the following exchange took place between defendant's attorney and Mayer:
Q. You have entered a plea of guilty to manslaughter, have you not?
A. I have.
Q. After your arrest back there in May, were you in the Parish Jail?
A. Yes sir.
Q. Do you remember telling an inmate there that Kenneth had nothing to do with the killing?
A. An inmate?
Q. Yes.
A. No sir.
Q. I put you on your guard and I will produce witnesses who will say that you told them that Kenneth had absolutely nothing to do with it. That you had done it and the only reason you implicated him was because he had mistreated you while you lived together. Do you deny it?
A. Do I deny what?
Q. What I've just said?
A. Yes sir.
BY MR. ASHLOCK, Counsel for defendant:
We'll produce the witness. We have no further questions.
BY MR. PUCHEU, District Attorney:
If Your Honor pleases he didn't lay, we will argue that later.
BY THE COURT:
Proceed Mr. Pucheu.
Defendant contends that he was forbidden by the trial court the following day of trial from calling his most important witness; one who would have impeached Sandra Mayer's testimony. Defendant contends he was informed by the trial judge in an off-the-record conference at the bench that he had failed to lay a proper foundation for introducing evidence of a prior contradictory statement, and therefore he would not be allowed to call his impeaching witness. Defendant maintains that the state's objection and the court's ruling were in off-the-record discussions which prevented him from maintaining an exception for the record and the judge's failure to instruct the jury left them with the prejudicial implication that the impeaching witness was a fabrication.
La.R.S. 15:493 provides as follows:

*1079 Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.
Defendant's contention that a proper foundation was laid in accordance with La. R.S. 15:493 is without merit. As to the time the alleged inconsistent statement was made, defense counsel was vague in only referring to the witness's incarceration in the parish jail. Defense counsel admitted that "the time is not precise because I didn't know the exact date." The only place mentioned is the parish jail. This is particularly insufficient in that the witness Mayer was a trustee in the prison with more access and mobility than other prisoners, and the alleged statement could have been made in numerous unnamed places. Defense counsel did not call to Mayer's attention any circumstances whatsoever under which the alleged statement was made. Although we are not prepared to say that the name of the person to whom the alleged statement was made must always be given, simply referring to an "inmate at the parish prison" does not comply with the statutory prerequisites. Defense counsel contends that he was hesitant in naming this inmate because he feared to "over identify" him and being a prison inmate, he could be "reached" and persuaded that to give such testimony was not in his best personal interest. We fail to understand how naming this inmate in a proper foundation on cross-examination of Mayer would lead to any more "pressure" being placed on the potential witness than he was already subject to. We note that this inmate had been named at the outset of trial as a defense witness and subpoenaed by the very authorities who would supposedly have encouraged him not to testify. Additionally, although defense counsel mentions an "inmate" at the parish prison, he tells Mayer: "... I will produce witnesses who will say you told them....." (Emphasis added.) It would be understandable in view of this questioning for the witness Mayer to be confused as to whom the alleged prior inconsistent statement was made.
The lack of sufficient specificity in calling to the witness's attention the time, place, circumstances, and person to whom the alleged statement was made precluded defense counsel from introducing evidence of a prior inconsistent statement.
Defendant's contention that the trial court forbade him from calling the impeaching witness is disputed by the state and not supported by the record. The record reveals that defendant's counsel requested that the jury be withdrawn. What follows is argument from both defendant and the state as to the sufficiency of the foundation laid by defense counsel the previous day upon his cross-examination of Sandra Mayer. After hearing argument from both sides, the trial court ruled that defense counsel had not laid the proper foundation. Defendant's contention that he was denied the opportunity to perfect his exceptions to an adverse ruling is likewise not supported by the record as is shown by the following:
BY THE COURT:
The Court will rule, Mr. Ashlock, that you have not laid the proper foundation.

BY MR. ASHLOCK, counsel for Defendant:
To which, Your Honor, we take exception making our Motion and your Ruling part of the record.
BY THE COURT:
It is so ordered.
We are not presented with the question of whether defendant should have been allowed the opportunity to place Mayer back on the stand for the purpose of laying a proper foundation. Defendant contends in brief that such a request was made and was denied, but this contention is not supported by the record.
These assignments lack merit.
*1080 ASSIGNMENTS OF ERROR NOs. 7 and 8
By these assignments defendant argues that the trial court erred in admitting the testimony of certain witnesses regarding the defendant's prior treatment of the deceased child.
The state, in accordance with the guidelines of State v. Prieur, 277 So.2d 126 (La. 1973), served defendant with notice of its intention to introduce evidence of prior acts of violence by defendant as well as certain statements and threats made toward the deceased child. The state contends that this evidence was relevant to show that defendant had a motive for killing the victim. The defense filed a pretrial motion to suppress the evidence referred to in the Prieur, notice contending that it amounted to nothing more than evidence of defendant's bad character which could only be used in rebuttal following an assertion by defendant of his good character.
Testimony by Marilyn Reed, Susan Soileau, Jennifer Turner, and Sandra Mayer was sufficient to show that the defendant had violently mistreated Jason Mayer. The victim was born with physical handicaps including club feet, one club hand, and a cleft palate. Because of his deformities, Jason was unable to walk, talk, or feed himself.
Reed testified that when Jason cried, the cleft palate apparently caused him to make a noise unlike a normal child's crying, which sounded more like "whining and whimpering." This noise annoyed and irritated defendant. Defendant had blown marijuana smoke in Jason's face and given the child beer. Defendant had stated to Reed that he and Sandra Mayer would have had a better relationship were it not for the presence of the handicapped child.
Susan Soileau was a babysitter for the defendant and Sandra Mayer and witnessed the victim in the presence of defendant often. She testified that she observed defendant on multiple occasions physically strike the victim with the back of his hand, choke him, and kick him. She stated that these physical abuses often took place when the defendant was intoxicated and often occurred as a result of defendant's apparent aggravation with the victim's crying. Jason was often observed with bruises on his face and chest. The defendant had made the statement in reference to the victim that "... it is about time we get rid of him...."
Jennifer Turner also witnessed bruises on the victim's back and chest and had seen defendant hit Jason with his hand. Turner further corroborated the prior testimony which tended to show that the baby's crying seriously aggravated defendant and apparently caused many of his attempts to quiet the baby by physical force. At one point the defendant stated that if Jason didn't shut up, "I'm going to throw you in a trash can."
In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a man of criminal character, evidence of the commission of other crimes is inadmissible unless the evidence has an independent relevancy besides simply showing a criminal disposition. See State v. Abercrombie, 375 So.2d 1170 (La.1979); State v. Sutfield, 354 So.2d 1334 (La.1978).
In addition to the statutorily prescribed purposes of knowledge, intent, and system (La.R.S. 15:445, 446), other crimes evidence may also be independently relevant to show motive, i. e., to show that the defendant had a reason to commit the crime he is charged with. State v. Sutfield, supra. In order for this evidence to have independent relevance the established motive must be factually peculiar to the victim and the charged crime and must additionally satisfy two tests:
... 1) there must be clear and convincing evidence that the defendant did indeed commit the other crimes, and 2) the probative value of the evidence must outweigh the risk of prejudicethe risk that the evidence will be used to convict the defendant because he is a man with a criminal disposition.
State v. Abercrombie, supra at 1175
*1081 Applying these rules to the challenged evidence, we hold that the testimony of witnesses Reed, Soileau, Turner, and Mayer was properly admissible to prove motive. The state was attempting to prove that defendant was the perpetrator of the senseless killing of a small child. The prosecution's case depended largely on inferences to be drawn from circumstantial evidence, so any evidence tending to prove that the defendant had a motive or reason for committing this crime was extremely probative. Defendant's physical abuse of the victim and his stated desire to rid himself of the child illustrate a motive factually peculiar to the murder of Jason Mayer.
The commission of these other crimes by defendant was established by clear and convincing evidence in the form of eye witness testimony to defendant's physical abuse of the victim. While acknowledging the possibility of some prejudice to defendant by the admission of this testimony, this risk of prejudice is far outweighed by the probativeness of the evidence in that it bore so directly on defendant's guilt of the murder of Jason Mayer.
These assignments lack merit.
ASSIGNMENT OF ERROR NO. 9
The defendant contends that the state presented no evidence of the essential elements of the crime charged. Sandra Mayer was indicted with defendant for the victim's murder and originally entered a plea of not guilty and not guilty by reason of insanity. Mayer subsequently entered a plea of guilty to the reduced charge of manslaughter. Defendant contends that Mayer's admission of the homicide together with the lack of direct evidence linking him with the crime necessitates a reversal.
A convicted defendant's attack upon the sufficiency of the state's evidence to prove his guilt is judged by determining whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Morgan, 389 So.2d 364 (La. 1980); State v. Landry, 381 So.2d 462 (La. 1980).
The state adduced the following evidence at trial: Following defendant and Mayer's move to a new house, Mayer packed up several boxes of discarded items and placed the boxes outside. Mayer testified that the boxes had been outside for days when defendant took one away in Gerald Johnson's car on the morning of May 14, 1979. He had not attempted to dispose of any of the boxes of trash before this date and did not dispose of any of the boxes later. Defendant reluctantly placed the box on the side of the road at the insistence of Johnson. Neither defendant nor Mayer mentioned the box of trash to the police, and on May 18 Johnson led police to the box containing Jason Mayer's body. Although Mayer told police that she suspected kidnapping, police investigation revealed no evidence of forcible entry at the house. There was no evidence that anyone other than defendant or Mayer could have entered the house and harmed the child between the time he was put to bed on the evening of May 13 and the time he was reported missing by Mayer the morning of May 14, shortly after defendant had left for work with the box of trash. Upon returning from work on May 14, defendant, when told of Jason's absence, told Mayer to stick to the story of kidnapping. Defendant testified that he was surprised and shocked to learn of Jason's disappearance upon arriving home on May 14, when in fact he had already been informed of the "kidnapping" by Hugh Bordelon (whose house he had stopped by on the way home). There was testimony of defendant's frequent physical abuse of the victim corroborated by Mayer. Mayer testified that she did not report defendant's violent behavior and his resentment and abuse of the victim because she was afraid of him since he had threatened to kill her and her children.
This court has held:
Where, as here, the State's case depends upon circumstantial evidence the rule is: "* * * assuming every fact to be proved that the evidence tends to prove, *1082 in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. We have held that the issue of whether every reasonable hypothesis of innocence had been excluded presents a question of law. State v. Pryor, 306 So.2d 675 (La.1975); State v. Williams, 310 So.2d 513 (La.1975).

State v. Smith, 339 So.2d 829, 833 (La. 1976), cert. denied 430 U.S. 986, 97 S.Ct. 1685, 52 L.Ed.2d 381 (1977).
The totality of the evidence indicates that only defendant and Mayer had access to the victim the night of May 13-14, 1979. The evidence presented is sufficient to support a finding that defendant was guilty as a principal, if not directly responsible for the killing. See La.R.S. 14:24. Because of the evidence summarized throughout this opinion we conclude that, if the jury assumed every fact to be proved that the evidence tended to prove, it would have been justified in concluding that every reasonable hypothesis of innocence had been excluded.
This argument lacks merit.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
DENNIS, Justice, dissenting.
The defendant was deprived of his right to call an impeachment witness after laying a sufficient foundation.
NOTES
[*] Judges O. E. Price of the Court of Appeal, Second Circuit, G. William Swift, Jr., of the Court of Appeal, Third Circuit, and Fred W. Jones, Jr., of the Court of Appeal, Second Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., James L. Dennis, and Jack C. Watson.
[1] La.R.S. 14:30 (Acts 1976, No. 657) states:

Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the recommendation of the jury.