554 So.2d 133 (1989)
STATE of Louisiana, Appellee,
v.
Jose Wardall ANDERSON, Appellant.
No. 21,173-KA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1989.
*134 William J. Perkins, Columbia, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Don C. Burns, Dist. Atty., Iley H. Evans, Asst. Dist. Atty., Columbia, for appellee.
Before FRED W. JONES, Jr., NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Defendant, Jose Wardall Anderson, was charged by bill of information with one count of armed robbery, LSA-R.S. 14:64. Convicted by jury of simple robbery, LSA-R.S. 14:65, he was sentenced to the maximum term of imprisonment, seven years at hard labor.
Defendant now appeals, reserving eight assignments of error. Three of those, being neither briefed nor argued, are considered abandoned. State v. Domingue, 298 So.2d 723 (La.1974); State v. Williams, 338 So.2d 672 (La.1976). Finding no merit to the other five assignments of error, we affirm the conviction and sentence.

FACTS
On June 2, 1988, at approximately 11:20 a.m., three men, Anthony Cornelious Pratt, Allen Ward, and Jose Anderson, were involved in a robbery of the K & D General Store in Grayson, Louisiana. There is some conflict as to what actually transpired, but the evidence is clear that Kevin Harveston, the store's owner, was robbed at gunpoint of approximately $500 in cash, several packs of cigarettes, a .38 caliber revolver and his wedding band.
According to Mr. Harveston, defendant first entered the store requesting motor oil, and was to pay for it after pouring it into his car. When he reentered the store with Ward, the pair asked the victim where they could find sandwiches. Subsequently, Ward came behind the counter, placed a nickel-plated .45 caliber handgun to Mr. Harveston's head and told him to lie on the floor or get his brains blown out. It appears that defendant then signaled for a third individual, Pratt, to come into the establishment. Defendant next went outside the store where witnesses saw him behind the wheel of a gray automobile.
The other two culprits, unable to open the register, forced Mr. Harveston to do so. They also instructed him to accommodate, and then get rid of, another customer who had later entered the store to pay for gas. Mr. Harveston, instead, swung at Pratt and began yelling that he had been robbed. As the two robbers ran out of the store, a witness noticed one of the them carrying a silver colored, nickel plated gun. The three men then drove off in a gray Buick with Pratt allegedly riding in the back seat behind the driver, Anderson.
A short time later, Deputy May of the Caldwell Parish Sheriff's Department stopped the Buick, which matched a broadcasted description of the robbery vehicle. As defendant stepped out of the automobile and came to the patrol car, the front seat passenger moved to the driver's position and drove away. Deputy May arrested defendant, placed him in the police unit and then pursued the other perpetrators.
*135 When the two remaining suspects eventually abandoned their vehicle, Pratt ran into some nearby woods and encountered Kelly "Cat" Meredith. Mr. Meredith attempted to detain Pratt at gunpoint, but the offender finally escaped, dropping a handgun as he ran away. Deputy Hurst witnessed this encounter and discovered a .45 caliber automatic pistol in the area.
Pratt was soon arrested and later pled guilty to armed robbery. Ward was arrested the next day, after spending the night in the woods. He and Anderson were tried together and found guilty of attempted armed robbery and simple robbery, respectively. Pratt testified for the defense at the trial, stating that he coerced defendant and Ward to assist in the robbery, all in contradiction of his earlier statement to the police officers.

ASSIGNMENT OF ERROR NO. 1
In the first assignment of error, defendant complains that Mr. Meredith and Deputy Hurst were allowed to testify, notwithstanding that they had never been listed as expected witnesses or placed under the rule of sequestration, LSA-C.Cr.P. Art. 764. Defendant argues that he did not know with whom the two witnesses might have discussed the case, and further that he was unable on voir dire to question prospective jurors concerning any relationship they may have had with the pair. The state asserted that it did not know these two individuals were to testify until the last minute.
Although the trial judge observed that the best practice is to name all witnesses before trial, he nevertheless ruled in favor of permitting Meredith and Hurst to testify, after concluding that defendant's failure to have their names in advance was not prejudicial. It was expressly noted that the two witnesses had not previously been in the courtroom, thus precluding a violation of the rule of sequestration.
The rule of sequestration of witnesses as stated in LSA-C.Cr.P. Art. 764(A) (now repealed) provided:
Upon its motion, the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
An order of sequestration is intended to assure that a witness will testify concerning his own knowledge of the case without being influenced by the testimony of prior witnesses, and to strengthen the role of cross-examination in developing facts. State v. Kimble, 407 So.2d 693 (La.1981); State v. Stewart, 387 So.2d 1103 (La.1980); State v. Lewis, 367 So.2d 1155 (La.1979). Article 764 vested discretion in the trial judge to disqualify a witness when a rule of sequestration had been violated. State v. Kimble, supra; State v. Mullins, 353 So.2d 243 (La.1977). A trial judge's ruling as to disqualification will not be disturbed on appeal absent a clear showing of an abuse of his discretion. State v. Kimble, supra; State v. Stewart, supra; State v. Lewis, supra; State v. Mullins, supra.
The transcript indicates that indeed neither Mr. Meredith nor Deputy Hurst were present in the courtroom during examination of other witnesses. In addition, the trial judge stated for the record, "They've not been in the courtroom, I can assure you of that." Appellant has presented no evidence indicating otherwise. Thus, a violation of the rule of sequestration has not been shown.
Nor does the fact that a witness is acquainted with some members of the jury, despite counsel being unable to question the jurors in that regard, demonstrate prejudice. Disclosure during trial that a juror is acquainted with a witness does not necessarily prevent a fair trial. State v. Felde, 422 So.2d 370 (La.1982); State v. Langendorfer, 389 So.2d 1271 (La.1980); State v. Daniel, 378 So.2d 1361 (La.1979).
On cross-examination of Mr. Meredith by defense counsel, the following colloquy occurred:

*136 I'm not asking you who, but do you know any members of the jury?
Yes, I do.
Do you know any of them very well?
Yes, I do.
Thank you.
Although the witness thus knew one or more of the jurors, there is no indication of who that juror was or in what capacity they were acquainted. Mr. Meredith had lived in the Columbia area for eight to ten years. It is therefore not unreasonable to expect that he would be acquainted withmembers of the community, possibly even jurors. Nevertheless, standing alone, the fact of such an acquaintance does not prejudice the defendant.
The testimony of both witnesses, in addition to laying a foundation for the introduction of the pistol into evidence, centered on establishing which of the offenders possessed the gun after the robbery. Consequently, beyond a chain of custody of the weapon, the evidence presented by these two witnesses was not pivotal as to defendant's guilt.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendant next asserts that it was error to allow the introduction of the gun, Exhibit S-1, into evidence. He contends the state failed to establish a chain of custody showing S-1 to be the same weapon picked up by Officer Hurst, and also failed to connect S-1 with either of the defendants. The crux of his argument lies in the lack of positive identification of the gun, the inability of Officer Hurst to remember if the pistol he found contained a magazine, and the absence of testimony regarding the gun's make, model or serial number.
To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case. State v. Paster, 373 So.2d 170 (La.1979). Lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact. State v. Robertson, 421 So.2d 843 (La.1982); State v. Paster, supra.
At trial, the victim, Mr. Harveston testified S-1 looked like the gun used to rob him. Mr. Harveston based his identification on the fact the gun used to rob him was large and shiny, and that he was able to get a "pretty close look" as far as the "front of it" was concerned. Mr. Meredith identified the pistol as being the same, or exactly like, one found in his garden. He also testified that he was never close enough to determine whether it had a magazine, but he saw one of the deputies pick up the gun. Next Deputy Hurst, although unsure if the gun he recovered had a magazine, identified S-1 as the pistol he found near Mr. Meredith's residence.
In State v. Robertson, supra, the pistol taken from the defendant's car could not be positively identified as the one used in the crime, but to the victim it felt like the one held to her head by her assailants. The Supreme Court concluded the gun "could have been" the crime weapon and that the issue of identification went to the weight of the evidence rather than to admissibility. See also State v. Joseph, 454 So.2d 237 (La.App. 5th Cir.1984).
The testimony of Mr. Harveston, Mr. Meredith, and Deputy Hurst establishes that more probably than not S-1 was the gun used to rob Mr. Harveston. Through this testimony, the gun was connected to defendant and his accomplices at the time of the robbery. The inability of the witnesses to remember if the gun had a magazine in it, along with the failure to give a make, model and serial number, was not fatal to the weapon's admission into evidence. Any doubt as to its adequate identification by the witnesses remained as an issue for the jury to decide. Furthermore, *137 any error in the admission of S-1 would be harmless since defendant's conviction for simple robbery does not involve the element of a dangerous weapon.

ASSIGNMENTS OF ERROR NOS. 4 AND 5
In these assignments of error, defendant contends the trial court erred in sustaining the state's objection to his cross-examination of Mr. Harveston, the state's rebuttal witness, regarding alleged prior inconsistent statements made.
During the prosecution's case-in-chief, Mr. Harveston testified Ward held the pistol on him at the time of the robbery. Pratt, a witness for the defense, stated he (Pratt) had the gun on Mr. Harveston. Subsequently, the state recalled Mr. Harveston as a rebuttal witness to refute Pratt's acknowledgment of wielding the weapon. The defense then attempted, for the first time, to impeach Mr. Harveston by presenting him with two documents (Answer To The Bill of Particulars and also a Supplemental And Amending Answer To The Bill of Particulars) alleged to contain prior inconsistent statements by the witness. The state objected that the questioning was going beyond the scope of rebuttal and also that prior inconsistent statements were not involved because "this witness didn't file any answers to bills of particulars."
The defense motion for particulars had sought to determine those facts within the knowledge of the arresting officers when, without a warrant, they arrested the defendant. The state responded, in the pertinent portion of its answer, as follows:
Defendant was arrested on June 2, 1988, at approximately 12:00 noon by Deputy Lavelle Parker, who is presently employed by the Caldwell Parish Sheriff's Office, Columbia, Louisiana. The defendant was arrested without a warrant based upon the following facts, to wit: Deputy Lavelle Parker was informed that on June 2, 1988, at about 11:20 a.m., the Caldwell Parish Sheriff's Office had received a call from Mr. Kevin Harveston, owner of K & D General Store, stating that his store had been robbed. Mr. Harveston had related that two black males had entered his store while one black male remained with an automobile outside; that the two black males that entered the store pulled a gun on him and made him lie on the floor; they then proceeded to empty the cash register of the monies deposited in the same and took a gun from Mr. Harveston, then exited the store. After the robbery was reported to the Sheriff's Office, an all station item was issued and given to all local law enforcement agents. The defendant, Jose Wardell Anderson, was later apprehended on foot behind the Piggly Wiggly Store in Columbia, Louisiana.
The amending answer later changed the name of the arresting officer and the details of how defendant was physically taken into custody, all of which obviously had been incorrect in the first answer.
The two documents involved were not prior inconsistent statements by the witnesses, Mr. Harveston. Instead, they were statements by the district attorney's office as to the knowledge of, not Harveston, but the deputy, knowledge based on information provided by a second party in the sheriff's office. Simply stated, these documents, not being prior inconsistent statements of the witness, could not be used to impeach him. Mr. Harveston, of course, had no knowledge as to what the deputies had been informed he said.
LSA-R.S. 15:493 (now repealed) provided:
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.
In impeaching a witness, the provisions of LSA-R.S. 15:493 are quite strictly *138 applied. State v. Heard, 408 So.2d 1247 (La.1982); State v. LaFleur, 398 So.2d 1074 (La.1981); State v. Gatlin, 396 So.2d 1294 (La.1981). The rationale for a stringent requirement of foundation is to obviate surprise, and to let the witness either deny or explain the inconsistency. The witness can do neither unless he is told exactly with which statement he is dealing. State v. Heard, supra.
An illustration of the strict application of the foundation requirement is found in State v. LaFleur, supra, wherein defense counsel questioned a witness regarding the making of a statement to a fellow inmate while the two were imprisoned. When counsel failed to question specifically as to the circumstances surrounding the statement, or to whom the statement was made, the foundation was held to be insufficient. Although presenting a slightly different factual scenario than the case at hand, LaFleur emphasizes the strict application of LSA-R.S. 15:493 before impeachment of a witness will be allowed.
In the present case, it was impossible to approach compliance with the foundation requirements of LSA-R.S. 15:493, again demonstrating the unavailability of these two pleadings for the purpose of impeaching the witness. Indeed, defense counsel did not attempt to lay a proper foundation before presenting the documents.
Earlier in the trial, defense counsel, apparently realizing the weakness of the documents with respect to their use as prior inconsistent statements, made no effort to confront Mr. Harveston during his direct testimony and cross-examination by two attorneys. Although testifying that defendant initially came into his store, Mr. Harveston went on to state that it was the other two offenders who eventually entered and robbed him while defendant remained outside. Thus, while the answer to the bill of particulars states that two black males entered the store, that statement is accurate in the context and time frame of the actual robbery itself, as portrayed by Mr. Harveston's testimony at trial.
Even had defense counsel secured an acknowledgment by Mr. Harveston that he made a statement as reflected in the documents, it would have availed defendant little in the way of impeachment. An early and probably excited utterance would have paled in comparison to his courtroom testimony, which was corroborated by other witnesses. Bryan Brewer and William Barton both testified that defendant waited in the car for his two accomplices. Also, Deputy May identified defendant as the driver of the vehicle, thus implicating him further.
Defendant also complains that the trial judge refused to permit cross-examination of Mr. Harveston, outside the presence of the jury, in order to "create a record." Deciding on such a procedure is within the sound discretion of the trial judge, and no abuse is shown in its denial here.
Based upon the foregoing, the sustaining of the state's objection was not prejudicial. These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 8
In this last assignment of error, defendant, a first felony offender, contends the trial court erred in imposing the maximum sentence allowed by law.
It is well settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied, 439 So.2d 1074 (La. 1983).
The sentencing guidelines of LSA-C. Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied, 435 So.2d 438 (La.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. *139 State v. Nealy, 450 So.2d 634 (La.1984); State v. Smith, 433 So.2d 688 (La.1983); State v. Knighton, 449 So.2d 1171 (La.App. 2d Cir.1984); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La. App. 2d Cir.1983), writ denied, 438 So.2d 1112 (La.1983).
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions and may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied, 452 So.2d 695 (La.1984). As a general rule, maximum sentences are appropriate only in cases involving the most serious violation of the offense and the worst type of offender.
Defendant asserts that the trial judge failed to comply with LSA-C.Cr.P. Art. 894.1, gave inadequate weight to mitigating factors, and overestimated the significance of factors weighing in favor of incarceration. The sentencing judge concluded that defendant was in need of corrective treatment in a custodial environment due to the assaultive nature of simple robbery and his involvement with cocaine and other drugs. It also was stated that a lesser sentence would deprecate the seriousness of the offense.
Although the trial judge did not list every element enumerated under LSA-C. Cr.P. Art. 894.1, the record reflects his attentiveness to those factors. The trial judge mentioned that a probationary sentence was not warranted under the circumstances, thus indicating consideration of the first-felony status of defendant. We cannot disagree with this conclusion in light of the violent nature of the offense, which involved the obvious potential for serious harm to the victim.
Additionally, the record supports the sentence imposed. Indeed, the presentence investigation report reveals, on the part of defendant, age 28, a history of disorderly conduct from 1978 through 1982. In 1985, charges of possession of marijuana and simple assault were dismissed. Defendant admitted to significant cocaine consumption and had used that substance prior to the robbery. Further, he received the advantage of a jury verdict which convicted him of simple robbery, instead of armed robbery, and greatly reduced his potential imprisonment exposure. Defendant asserts imprisonment will entail excessive hardship in that he is married and has two children. Yet, in light of his age, the prior history of misconduct, the benefits gained through his conviction of the less serious offense, and the harm done to society, we deem the imposed sentence more than adequately justified.
The conviction and sentence are affirmed.
AFFIRMED.